SHERIDAN HEALTHCORP.,
INC., Plaintiff,

v.

NEIGHBORHOOD HEALTH
PARTNERSHIP, INC.,
Defendant.

No. 06–61098 CIV.

United States District Court,
S.D. Florida,
Miami Division.

Sept. 22, 2006.

Paullette Christine Deruelle, Edward Soto, Weil Gotshal & Manges, Miami, FL,

**1270**

for Neighborhood Health Partnership, Inc., Defendant.

Meredith Ann McCardle, Eileen Lynskey Parsons, Ver Ploeg & Lumpkin, Miami, FL, for Sheridan Healthcorp., Inc., Plaintiff.

## ORDER OF REMAND

ALTONAGA, District Judge.

**THIS CAUSE** came before the Court upon Plaintiff, Sheridan Healthcorp, Inc.'s ("Sheridan['s]") Motion to Remand [D.E. 5], filed on August 21, 2006. The Court has carefully reviewed the parties' written submissions.

On June 20, 2006, Sheridan, a healthcare provider employing physicians and other medical professionals, filed suit against Defendant, Neighborhood Health Partnership, Inc. ("NHP"), a licensed health maintenance organization, in the Circuit Court in the Seventeenth Judicial District in and for Broward County, Florida. Sheridan's three-count Complaint includes state law claims for damages for breach of express (Count I) and implied in fact (Count II) contracts made between Sheridan and NHP, as well as for declaratory relief (Count III). NHP filed its Notice of Removal on July 21, 2006, and Sheridan now seeks to remand the action.

## I. BACKGROUND

On December 23, 2004, Sheridan and NHP signed an agreement (the "Written Agreement") in which Sheridan contracted to provide medical services to NHP members for reimbursement rates listed in a schedule to the Written Agreement. By letter dated February 23, 2006, NHP informed Sheridan that it would not renew its Written Agreement with Sheridan and that Sheridan would no longer be a participating provider in the NHP network as of March 1, 2006. In that correspondence, NHP included a revised schedule of reimbursement rates that NHP intended to pay Sheridan for services rendered after the expiration of the Written Agreement.

In a letter dated February 28, 2006 (the "Continuing Offer"), Sheridan rejected NHP's proposed reimbursement rates and provided its own schedule of reimbursement rates for non-emergent services. The Continuing Offer states that "whenever an NHP commercial or Medicare member uses a Sheridan provider for any of the non-emergent Affected Health Services, United and NHP will be contractually liable to Sheridan for 100% of the Billed Charges [.]" (*Ex. C to Compl.*). Sheridan alleges that since expiration of the Agreement on March 1, 2006, NHP has "repeatedly authorized, approved or otherwise permitted or allowed its members to obtain non-emergent Affective Services from Sheridan employed and engaged providers." (*Compl.* ¶ 48).

Count I of Sheridan's Complaint alleges that in breach of the Written Agreement, NHP failed to reimburse Sheridan for services rendered and that NHP failed to reimburse Sheridan in a timely fashion under the Written Agreement and Florida law.[1] Count II of the Complaint alleges that NHP's failure, after expiration of the Written Agreement, to reimburse Sheridan pursuant to the reimbursement rates contained in the Continuing Offer was a breach of an implied in fact contract between NHP and Sheridan. Count III requests a declaration that Sheridan is enti-

---

1. Sheridan alleges that NHP's failure to pay Sheridan for services rendered to NHP members, in violation of Fla. Stat. § 641.3154, and NHP's failure to pay Sheridan's "clean claims" that were filed electronically within a 120–day period, violate Fla. Stat. § 641.3155(6).

tled to payment based on the terms stated in the Continuing Offer.

## II. *LEGAL STANDARD*

■ The burden of establishing federal jurisdiction falls on the party that is attempting to invoke the jurisdiction of the federal court. *McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 189, 56 S.Ct. 780, 80 L.Ed. 1135 (1936). Courts should strictly construe the requirements of 28 U.S.C. § 1441 (removal jurisdiction) and remand all cases in which such jurisdiction is doubtful. *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 109, 61 S.Ct. 868, 85 L.Ed. 1214 (1941). Moreover, removal statutes are construed narrowly, and when the plaintiff and defendant clash on the issue of jurisdiction, uncertainties are resolved in favor of remand. *Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1095 (11th Cir.1994).

A defendant may remove a case to federal court only if the district court would have had jurisdiction over the matter had the case been filed there originally. *See* 28 U.S.C. § 1441(a); *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 63, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987); *Kemp v. Int'l Bus. Machines Corp.*, 109 F.3d 708, 711 (11th Cir.1997). District courts have original jurisdiction over diversity cases and cases arising under federal law. 28 U.S.C. §§ 1331, 1332. As NHP claims that removal is proper in this case because Sheridan's claims arise under federal law, the Court will only look to see if such federal-question jurisdiction is present.

■ "The presence or absence of federal-question jurisdiction is governed by the well-pleaded complaint rule, which pro- vides that federal jurisdiction exists only when a federal-question is presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987). However, there exists an "independent corollary" to the well-pleaded complaint rule known as "complete preemption" or "super preemption," which creates federal-question jurisdiction when the "pre-emptive force of a statute is so 'extraordinary' that it 'converts an ordinary state common-law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule.'" *Id.* at 393, 107 S.Ct. 2425 (quoting *Metro. Life Ins. Co.*, 481 U.S. at 64, 107 S.Ct. 1542); *see also Butero v. Royal Maccabees Life Ins., Co.*, 174 F.3d 1207, 1211–12 (11th Cir. 1999). Complete preemption is not to be confused with "defensive preemption," which provides an affirmative defense to state law claims but does not furnish federal subject-matter jurisdiction. *Butero*, 174 F.3d at 1212.

■ One such federal statute to which the doctrine of complete preemption applies is the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001, *et seq.*. Specifically, the ERISA civil enforcement provision, 29 U.S.C. § 1132(a) (or "Section 502(a)"),[2] has such a complete preemptive force that it converts an ordinary state common law complaint into one stating a federal claim. *See Aetna Health Inc. v. Davila*, 542 U.S. 200, 209, 124 S.Ct. 2488, 159 L.Ed.2d 312 (2004) (holding that "any state-law cause of action that duplicates, supplements or supplants the ERISA civil enforcement remedy conflicts with the clear congressional intent to

---

**2.** The relevant language of Section 502(a) provides for a civil cause of action which may be brought by a "participant or beneficiary" to "recover benefits due to him [or her] under the terms of his [or her] plan, to enforce his [or her] rights under the terms of the plan, or to clarify his [or her] rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B).

make the ERISA remedy exclusive and is therefore pre-empted."). Complete pre-emption exists under Section 502(a) when the following four elements are satisfied: (1) plaintiff's complaint involves a relevant ERISA plan; (2) the plaintiff has standing to sue under the plan; (3) the defendant is an ERISA entity; and (4) the complaint seeks compensatory relief similar to what is available under Section 502(a). *Butero,* 174 F.3d at 1212.

### III. *ANALYSIS*

■ NHP contends that all of the above elements are met in this case. Specifically, NHP argues that: (1) Sheridan's breach of contract and breach of implied in fact contract claims implicate and require the interpretation of NHP members' ERISA plans; (2) Sheridan would have standing to raise its breach of implied in fact contract and declaratory judgment claims under Section 502(a); (3) many NHP plans are ERISA plans; and (4) the types of relief requested by Sheridan mirror the remedies Section 502(a) makes available to ERISA plan members seeking benefits from their insurers.

As to the first element, NHP argues that the Written Agreement and the Continuing Offer implicate ERISA plans because each relies on patients' reimbursement rights under their ERISA benefit plans. In particular, NHP argues that after the expiration of the Written Agreement, the only claims that Sheridan may have against NHP relate to patients' rights under ERISA benefit plans. Sheridan maintains that the claims regarding the breach of the Written Agreement and the Continuing Offer do not implicate ERISA benefit plans, but rather relate to the separate agreements made between Sheridan and NHP.

In *Lordmann Enter., Inc. v. Equicor, Inc.,* the Eleventh Circuit held that state law claims brought by healthcare providers against plan insurers affect ERISA plans too tenuously to be completely preempted. 32 F.3d 1529, 1533 (11th Cir. 1994); *see also Med. & Chirurgical Faculty of the State of Md. v. Aetna U.S. Healthcare, Inc.,* 221 F.Supp.2d 618, 619 (D.Md.2002) ("Courts have, with near unanimity, found that independent state law claims of third party care providers are not preempted by ERISA.") (citations omitted). The court in *Lordmann* reasoned that complete preemption in the context of a third-party healthcare provider's claims against an insurer would not serve ERISA's purpose, which is to protect the interests of employees and beneficiaries covered by benefit plans. *Id.* The court stated that if healthcare providers' state law claims against insurers are always preempted by ERISA, the providers would not be able to rely on the representations of insurers and in turn would protect themselves by raising fees or denying care. *Id.; see also In re Managed Care Litigation,* 135 F.Supp.2d 1253, 1268 (S.D.Fla.2001); *Med. & Chirurgical Faculty of the State of Md.,* 221 F.Supp.2d at 620. The court also theorized that complete preemption in this context is improper because healthcare providers were not parties to the ERISA "bargain" in which employers and employees relinquished certain state law causes of action in exchange for ERISA's regulatory regime. *Lordmann Enter., Inc.,* 32 F.3d at 1533–34.

Sheridan's state law breach of contract claim clearly relies on the Written Agreement, which is independent of NHP plan members' ERISA benefit programs. The Written Agreement includes a reimbursement schedule for services that Sheridan may provide to NHP plan members, and the relevant Florida statutes mandate that such reimbursement must be made to Sheridan, and set a time frame for such

reimbursement. Consequently, Sheridan's breach of contract claim does not require any inquiry into NHP members' plans. All that is relevant to the inquiry is the Written Agreement between Sheridan and NHP.

The cases that NHP relies on for the proposition that such contracts do relate to an ERISA plan are unavailing in that those cases involved either actual plan beneficiaries or fiduciaries bringing state law claims against insurers for unpaid benefits, or derivative claims brought by healthcare providers based on assignments of rights under plans executed by their patients. For example, *Aetna Health, Inc. v. Davila* involved actual ERISA plan beneficiaries who filed suit against their insurers for injuries suffered as a result of the denial of benefits. 542 U.S. at 205, 124 S.Ct. 2488. Furthermore, *Hermann Hosp. v. MEBA Med. & Benefits Plan,* is unpersuasive because it involved a medical service provider who brought suit against an insurer *under* ERISA and other state law claims, and the court held that the plaintiff had standing to sue under ERISA because it acted as an assigned beneficiary. 845 F.2d 1286, 1287 (5th Cir.1988). Sheridan does not allege that it is an assigned beneficiary.

Similarly, Sheridan's breach of implied in fact contract and declaratory judgment claims neither relate to an ERISA plan nor do they require Sheridan to act as an assignee to NHP members' plan benefits. NHP argues that after the expiration of the Written Agreement, Sheridan had to rely on its patients' rights for reimbursement under their relevant ERISA benefit plans to claim compensation from NHP. However, that argument ignores the fact that Sheridan's Continuing Offer (the alleged implied in fact contract) serves as an agreement independent of the patients' ERISA benefit plans. Sheridan alleges that NHP accepted the Continuing Offer when it authorized its members to seek services from Sheridan physicians.

The complete preemption analysis for the breach of implied in fact contract and declaratory judgment claims does not differ from the analysis as applied to the breach of express contract claim because Florida law makes no distinction between an express written contract and one that is implied in fact. *See Rabon v. Inn of Lake City, Inc.,* 693 So.2d 1126, 1131 (Fla. 1st DCA 1997) (holding that there is "no difference in the legal effect of an express contract and a contract implied in fact."). Consequently, for the same reason stated as to Count I, Sheridan's breach of implied in fact contract claim (Count II) and the declaratory judgement claim, which requests a declaration that Sheridan is entitled to reimbursement pursuant to the Continuing Offer (Count III), also do not relate to an ERISA plan. Whether the Continuing Agreement is a valid, implied in fact contract between the parties is a question of state law.

As to the second element necessary for complete preemption under Section 502(a), Sheridan's standing to sue, NHP also argues that Sheridan is a necessary assignee of the rights of ERISA plan beneficiaries after the expiration of the Written Agreement, because there was no independent agreement between NHP and Sheridan after March 1, 2006. NHP's argument ignores Sheridan's allegation that the Continuing Offer served as an independent, implied in fact contract between the parties. Thus, Sheridan has no standing to raise any claims pursuant to Section 502(a).

Moreover, for Sheridan to have standing to raise a claim pursuant to Section 502(a), Sheridan must have obtained *written* assignments of claims from beneficiaries; a constructive assignment does not suffice

under Section 502(a). *See Hobbs v. Blue Cross Blue Shield of Alabama,* 276 F.3d 1236, 1241–42 (11th Cir.2001) (holding that a healthcare provider cannot be held as an assignee of patients' ERISA benefits absent a factual showing by the party seeking removal). Nowhere in its Complaint does Sheridan allege that it obtained written assignments from beneficiaries, nor do the three claims in the Complaint require Sheridan to allege an assignment from any beneficiaries. Even if Sheridan may have such assignments, their existence would be irrelevant because Sheridan does not rely on such assignments for the claims stated in the Complaint. *See Caterpillar, Inc.,* 482 U.S. at 395, 107 S.Ct. 2425 (holding that "[a]s masters of the complaint" plaintiffs may choose to not include references to certain rights to avoid complete preemption); *Children's Hosp. Corp. v. Kindercare Learning Ctr., Inc.,* 360 F.Supp.2d 202, 207 (D.Mass.2005) (holding that even though hospital was the assignee to its patients' ERISA benefits, Section 502(a) standing was not proper because the hospital did not rely on the assignments in its complaint).

The doctrine of complete preemption does not apply to this case because Sheridan's claims do not relate directly to an ERISA plan and because Sheridan does not have standing under Section 502(a). Accordingly, it is unnecessary to address the third and fourth elements necessary for a finding of complete preemption. *See Butero,* 174 F.3d at 1212.

In addition to asking that this case be remanded, Sheridan petitions the Court for its costs and attorney's fees associated with the Motion. Under 28 U.S.C. § 1447(c), an "order remanding the case may require payment of just costs and any actual expenses, including attorney's fees, incurred as result of the removal." "[C]ourts may award attorney's fees under

§ 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal." *Martin v. Franklin Capital Corp.,* 546 U.S. 132, 126 S.Ct. 704, 711, 163 L.Ed.2d 547 (2005). Additionally, "there is no indication that a trial court should ordinarily grant an award of attorney's fees whenever an effort to remove fails." *Kennedy v. Health Options, Inc.,* 329 F.Supp.2d 1314, 1319 (S.D.Fla.2004).

NHP's basis for removal was not objectively unreasonable. The law with respect to compete preemption under ERISA is especially fluid and dynamic. The Eleventh Circuit has not specifically addressed whether breach of implied in fact contract claims made by a medical services provider are completely preempted by ERISA. Therefore, the Court declines to award Sheridan attorney's fees. However, the award of just costs and actual expenses is appropriate, and Sheridan shall recover these sums from NHP.

For the foregoing reasons, it is

**ORDERED AND ADJUDGED** that Plaintiff's Motion to Remand [D.E. 5] is **GRANTED.** The case is **REMANDED** to state court. Plaintiff's request for attorney's fees and costs is **GRANTED** in part and **DENIED** in part. The Court reserves jurisdiction over the issue of costs. The Clerk of the Court is instructed to **CLOSE** the case and any pending motions are **DENIED AS MOOT.**